Savino Braxton, pro se
Reg. No. 27314-037
FCI Danbury
33½ Pembroke Road Rt. 37
Danbury, Connecticut 06811
            Plaintiff,

    - against -


David Simon, Journalist,
Writer & Producer


and


Edward Burns, Writer, &
Producer


and


Home Box Office, Inc.
1100 Avenue Of The Americas
Room H13-16
New York, NY 10036 et. al.
in their individual and
official capacities
        Defendants,
_____/

In The

United States District Court

For The Northern

District Of  Maryland

Case No. _____

FILED ____ ENTERED
____ LODGED ____ RECEIVED

JAN 0 8 2020

AT _____ DISTRICT COURT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
                            DEPUTY
BY _____

JKB-00-94

Long Arm Civil Action


Complaint

    Plaintiff, Savino Braxton, Cf (Hereinafter, "Plaintiff")

acting in proper person, brings this civil action against

Defendants David Simon, Edward Burns, and their known and

unknown affiliates, including Home Box Office, Inc. Cf

(Collectively, "Defendants") and in support thereof, states the

following :

## Parties And Jurisdiction

1. Plaintiff, Savino Braxton, is also a name and/or name
alike used by Defendants to create one of the characters played
in the Home Box Office, Inc.'s syndicated television series,
"The Wire." The Wire was a narrative depiction of Baltimore
City's macro and micro political upheavals and social
stratifications combined, including but not limited to : family,
health, education, employment, government, law enforcement,
economic,race,sexual origin, gender, gangs, and the open street
market - heroin trade in and around Baltimore City during the
1980s and early 1990s.

2. At all times relevant to this action, Plaintiff was a
long time resident and domiciliary of Baltimore City in which he
garnered a rich and diverse back ground from being a noticeable
entrepreneur in the legitimate business circle and from the
Baltimore's open street market heroin trade.

3. Defendant, David Simon, is a journalist by trade and
a co-producer and co-creator of HBO's The Wire. In or around the
1980s and 1990s, and at all times relevant to this action,
Defendant Simon obtained certain public known - individuals
birth names, surnames, and pseudonym street names, along with
documented occurrences in connection with the heroin trade and
other crimes in Baltimore City, to produce, promote, and market
The Wire for commercial purposes.

4. Defendant, Edward Burns is also a co-producer and
co-creator of The Wire. He was a former Baltimore City school

page 2

teacher, and a special agent in law - enforcement during the 1980s and 1990s, in and around the Baltimore area. At all times relevant to this action, Defendant Burns worked under the auspices of both state and federal law enforcement authorities, in joint interdiction task forces, in narcotic and homicide related undercovered operations. Defendant Burns provided Defendant Simon with direct information about various crimes and what, where, and who were involved, including information about the Baltimore's heroin trade that Burns acquired during his tenure as an agent in Baltimore at that time. Burns' information were used, in part, to produce, promote, and market The Wire for commercial purposes.

5. Defendant, Home Box Office, Inc., is a national cable network company. At all times relevant to this aciton, HBO's principal place of business was/is located at 1100 Avenue of the Americas, Room H13-16 New York, NY 10036. HBO and its affiliates, known and unknown, contracted with Defendants Simon and Burns and their known and unknown affiliates to host episodes of The Wire's TV series through the resources associated with its network. On information and belief, HOB co-produced, broadcasted, aired, promoted, and marketed The Wire story scripts based on the information provided by Simon and Burns for commercial purposes.

6. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a), and Maryland's long arm statute, pursuant to Md. Code, Cts. & Proc. Art., §§ 6-102 (a) and 6-103.

See, Also, the lex loci delicit doctrine, Rule 4 (e) of Fed. R. Civ. P., and 42 U.S.C. § 1983.

7. Venue is appropriate here in this Honorable Court pursuaant to 28 U.S.C. $ 1391, and Maryland's long arm statute, pursuant to Md. Code, Cts. & Proc. Art., § 6-102 (a), (b), because HBO's The Wire was produced and aired or occurred in and around the Baltimore City's limits.

## Statement Of Facts

8. At all times relevant hereto, David Simon worked as a journalist by trade for the Baltimore Sun New Paper, in and around Baltimore City during the mid and late 1980s and early 1990s. At this particular time, Baltimore was heavily saturated with an open-street market heroin trade. Through his journalism, Defendant Simon compiled a documented ledger of events, occcrrences, locations, dates, times, and individual names purportedly related to various crimes, including the heroin trade during this time in Baltimore. It was from the gathering of this pertinent information that Simon and Burns co-created the crux of The Wire.

9. At all times relevant hereto, Defendant Burns worked as a special agent in joint state and federal interdiction task force investigating homicide incidences allegedly related to Baltimore's heroin trade. Simon reached out to Burns for access to his hands-on information and resources, at which time, the two parties collaborated to create and produce The Wire.

10. Defendant Burns' covert operations in and around Baltimore, eventually lead to the investigations of ones said Warren Boardley, Kenneth "Kennie Bird" Jaskson, and Linwood Rudolph "Rudi" Williams. Burns' investigation discovered other noticeable name individuals by consulting with historic Baltimore street figures, such as, Melvin Williams a/k/a "Little Melvin or Black," and Shorty Bruce. Melvin Williams played as an actor in The Wire.

11. Defendant Burns later discovered the names of Walter Lee "Stinkum" Powell, Avon Barksdale, Stringer, Wendell "Orlando" Blocker, and Savino Braxton - all of whom were portrayed in The Wire in a different light.

12. In a December, 2012 e-mail interview conducted by Van Smith, a Baltimore's New Paper Journalist for the "City Paper," The Wire's co-producer, Defendant Simon, concedes that the Defendant(s) deliberately used real people names, "to supplant The Wire - characters." The names and occurrences were used, according to Simon, to give reality a chance to exist on its own, while at the same time, creating a collective sense of the real Baltimore that they (Defendants) were depicting.

13. In the same vein, Defendant Simon implied during the December, 2012 e-mail interview, that Savino Bra[t]ton (a name and character used in The Wire) supplanted the real name of Savino Bra[x]ton, an individual who person is highly recognized in and around Baltimore City as an entrepreneus owing and operating various retail stores during the 1980s and 1990s,

and from being involved in the high profiled heroin conspiracy and distribution case, extending from that of Rudi Williams, for which Plaintiff has spent a significant amount of time in federal prison as a result therefrom.

14. At all times relevant hereto, Plaintiff pled not guilty in the Rudi Williams' case on all three charges named against him in the indictment : conspiracy, 21 U.S.C. § 846 (count one); distribution, 21 U.S.C. § 841 (count four); and distribution, 21 U.S.C. § 841 (count six). The jury returned a guilty verdict [only] on count four and acquitted Plaintiff on counts one and six. Thereafter, Plaintiff went to federal prison in the Rudi Williams' case in 1990 and was not released until 2007. He returned to federal prison in 2012 and has since been there.

15. The Wire's story script described Savino Bra[t]ton as the character played by Christopher Clanton, a Baltimore actor who was stabbed and killed at an Overlea party. Actor Clanton's character in season one was a dreadlocked soldier in the Barksdale organization who helped set up the shooting of Detective Shakima Kima Gregges and Strip - club manage Orlando Blocker. See (Dec. Interview attached hereto).

16. In lieu of using the correct birth name and partially misspelled last name of  Plaintiff in the wrong order, the Defendants tactically used Plaintiff's name, while at the same time, attempted to distance him from the history of the character played by Christopher Clanton in The Wire. This direct and/or indirect semantic play and maneuvering of the name (Savino

Bra[x]ton) and the character (Savino Bra[t]ton) to give the reality of Baltimore a chance to exist in its story script, clearly demonstrates that the Defendants deliberately misappropriated Plaintiff's name in a false light to invade his privacy for commercial purposes, to benefit unjust enrichments without Plaintiff's consent. Plaintiff rebuts any presumption which suggests otherwise.

17. HBO also benefited from unjust enrichments in this respect, from the successful sales of The Wire, by the rise in television and/or cable ratings, advertisement profits, DVD sales, Netflix sales, and other forms of internet streaming sales both nationally and internationally.

18. Moreover, the Defendants used The Wire as a metaphor to indirectly tell the stories of Warren Boardley, Rudi Williams, and Kenneth "Kennie Bird" Jackson - a Baltimore strip club owner, as The Wire depicted  real life occurrences specifically related to Boardley, Jackson, and Williams, and Rudi's nephew, Namon Williams without mentioning their names or identifying who they were. Put differently, it can reasonably be presumed that Defendant Burns, through co-producing The Wire with Defendants Simon and HBO and their affiliates, used The Wire, not just for commercial profit purposes, but to continue his (Burns) investigation into alleged unsolved cold - cases.

19. Plaintiff was more noticeable in the public eyes as a legitimate entrepreneur than the drug-thug portrayed of him in The Wire through Christopher Clanton, despite his involvement in

the Rudi Williams' case. Plaintiff was haplessly given a negative connotation for a character that was implied to be, but not really him as a result of the Defendants' exploitation of his name and likeness in a false light.

20. Its also a rebuttable presumption that Plaintiff could never obtain direct or collateral relief from his  heroin - conviction in the Rudi Williams' case in the 1990s, as well as, his current federal heroin related 2012 conviction although he has clearly shown procedural and constitutional violations in both cases, because of the misappropriate commercial use of his name and person in a false light in The Wire.

21. As a direct and proximate result of the aforecited, the Defendants conspired to misappropriate Plaintiff's name to invade his privacy for unjust enrichments, and for commercial purposes without Plaintiff's consent.

### COUNT I.
### (Civil Conspiracy)

22. Plaintiff hereby incorporates by reference, the facts and allegations set forth in paragraphs 1 through 21 above as if fully set forth herein, in count I.

23. The Defendants violated Plaintiff's constitutional and civil rights, including Maryland's common law and statutory prohibition against civil conspiracy, when they agreed to conspired with an expressed and/or implied agreement and/or understanding between themselves and others in connection with the creation, production, and promotion of HBO's The Wire for commerical purposes

without Plaintiff's consent.

24. The Defendants agreed, conspired, and had an expressed  or
implied agreement and understanding amongst themselves to
misappropriate Plaintiff's name and invade his privacy; for
metaphysical value and to gain publicity; for the benefit of
unjust enrichments; for commerical purposes without Plaintiff's
consent.

25. The Defendants agreed, conspired, and had an expressed or
implied agreement and understanding between themselves and other
in connection with deliberately using some real life occurrences,
and real people's name from the Baltimore's area, in relation to
those occurrences, to supplant characters and to imply that the
characters were, in fact, the real people whose names were portrayed
by the characters, for unjust enrichments, for commerical purposes,
without anyone's consent.

26. The Defendants agreed, conspired, and had an expressed or
implied agreement and understanding between themselves and others
in connection with specifically using Plaintiff's name in the
wrong order with a character played in The Wire, who story script
was different from the real life story of the Plaintiff, to imply
that the character was, in fact, the Plaintiff, to give reality of
Baltimore a chance to exist in the story script.

27. The Defendants entered into the conspiracy and committed
these wrongful acts in furtherance thereof with actual malice and
an actual intent to invade Plaintiff's privacy and misappropriate
his name to gain publicity; for commercial purposes; for unjust
enrichments in the sum of Multi-Million of dollars.

28. As a direct and proximate cause of Defendants' conspiracy, Plaintiff his incurred compensatory damages because the Defendants did not obtain his consent, nor did they pay him to use his name in episodes of HBO's The Wire. Whereby, Plaintiff's "home base and very familiar name," cause the story line to have a different effect on the audience and; therefore, assisted, in part, to the marketing and increased sales of The Wire. As a result, the Defendants benefited significantly from the proceeds of the monetary success of the story.

Wherefore, Plaintiff demands judgment, jointly, and severally against Defendants in an amount $ 1,000,000.00. Plaintiff is entitled to recover these proceeds in this amount from The Wire's over all contracts, and from prior, present, and ongoing royalties. Plus, Plaintiff is entitled to recover from punitive damages in an amount deemed appropriate for Defendants' intentional and malice conduct. The Plaintiff requests that the court award such other and further relief which it deems just and appropriate in this matter.

COUNT II.
(Invasion Of Privacy)
(False Light Invasion Of Privacy)

29. Plaintiff hereby incorporates by reference, the facts and allegations set forth in paragraphs 1 through 28 above as if fully set forth herein, in count II.

30. The Defendants violated Plaintiff's constitutional and civil rights, including Maryland's common law and statutory prohibition against invasion of Plaintiff's privacy, when Defendants

page 10

gain publicity from the misappropriation of Plaintiff's name or name alike, for metaphysical value and commercial purposes, to benefit unjust enrichments without Plaintiff's consent.

31. The Defendants also violated Plaintiff's constitutional and civil rights, including Maryland's common law and statutory prohibition against "false light" invasion of Plaintiff's privacy, when Defendants deliberately placed Plaintiff before the public in a "false light," when the Defendants tactically altered an arcane change in the spelling of one-simple-letter to Plaintiff's last name. That is, from Bra[x]ton to Bra[t]ton, to imply that the character portrayed in The Wire, was, in fact, the Plaintiff, when the story script was completely different from the real life story to that of the Plaintiff.

32. As Defendant Simon said in his own words : this tactic was used to effect the audience, " <u>by given reality a chance to exist on its own, while at the same time, creating a collective sense of the real Baltimore</u>." The metaphysical value of the real life - implied Savino Braxton; however, had an effect on the audience and help boost sales in many ways in the process.

33. As a direct and proximate cause of Defendants invasion and/or false light invasion of Plaintiff's privacy, Plaintiff has incurred compensatory and other damages in an amount of $ 1,000,000.00, or the damages should at least be measured by the imposition of liability for a reasonable royalties.

Wherefore, Plaintiff demands judgment, jointly, and severally against Defendants in an amount of $ 1,000,000.00, plus recovery

against Defendants in an amount of $ 1, 000,000.00, plus punitive
damages in an  amount deemed necessary and that the court deems
just and fair.

COURT IV.
(Unjust Enrichment)
(Quasi Contract)

38. Plaintiff hereby incorporates by reference, the facts and
allegations set forth in paragraphs 1 through 37 above as if fully
set forth herein, in count IV.

39. The Defendants violated Plaintiff's constitutional and
civil rights, including Maryland's common law and statutory
prohibition against the benefit of unjust enrichments in regards to
a quasi-contract. The Defendants were unjustly enriched as a result
of invading Plaintiff's privacy and miappropriating his name for
commerical purposes without his consent, as well as without paying
Plaintiff restitution from the benefits of proceeds it made.

40. The Defendants used or misappropriated Plaintiff's name
with[out] a contract, for unjust enrichments, at which time, the
law implied that a promise was made on the part of the Defendants to
pay a particular debt to the Plaintiff for what was used by the
Defendants, the name (Savino Braxton), but belong to the Plaintiff.

41. If can be said; therefore, that the no contract or quasi-
contract involved in this case, [im]plied under Maryalnd's law,
that the misappropriation and/or invidious comparsion of Plaintiff's
name of the character played in The Wire was conferred upon the
Defendants by the Plaintiff. The Defendants knew of the value of
the misappropriation, and what effect it would have on its audience

page 13

The circumstances expressed throughout this complaint clearly made it inequitable for the Defendants to have retained the benefits from The Wire's story script, without paying the Plaintiff for his value.

42. As a direct and proximate cause of Defendants' unjust enrichments in regards to the no contract or quasi-contract concerning this case, Plaintiff has incurred compensatory and/or other damages in an amount of $ 1,000,000.00, or the damages should at least be measured by the imposition of liability for a reasonable measurement of royalties.

Wherefore, Plaintiff demands judgment, jointly, and severally against Defendants in an amount of $ 1,000,000.00, plus punitive damages in an amount deemed necessary and that the court deems just and fair.

COUNT V.
(Intentional Infliction Of
Emotional Distress And Outrage)

43. Plaintiff hereby incorporates by reference, the facts and allegations set forth in paragraphs 1 through 42 above as if fully set forth herein, in count V.

44. The Defendants violated  Plaintiff's constitutional and civil rights, including Maryland's common law and statutory prohibition against intentional infliction of emotional distress and outrage. The Defendants intentionally and recklessly inflicted emotional distress and outrage upon the Plaintiff by its actions and inactions, directly and indirectly.

45. Specifically, the Defendants used Plaintiff's name and

page 14

likeness without his consent, and in a false light. In doing so, the Defendants benefited unjust enrichments from the commercial use of Plaintiff's name and failed to share any of the financial proceeds with the Plaintiff. Its a rebuttable presumption that the Plaintiff has not been able to prevail on his criminal litigations because of the Defendants' actions of placing him in the public eyes in a false light. These actions and inactions has affected Plaintiff's daily functions and sleep. It can be said that Plaintiff's emotional distress is severe and is connected to Defendants' wrongful conduct or acts.

46. As a direct and proximate cause of Defendants' intentional or reckless infliction of emotional distress and outrage, Plaintiff has incurred compensatory and/or other damages in an amount that are not measurable.

Wherefore, Plaintiff demands judgment, jointly, and severally against Defendants in no one specific amount, and for the imposition of liability for a reasonable  amount  of royalties, plus punitive damages in an amount deemed necessary and that the court deems just and fair.

## Prayers For Relief

Wherefore, based upon the foregoing allegations, Plaintiff respectfully request that the court enter judgment, as a matter of law against the Defendants :

a.) Award Plaintiff One Million Dollars, $ 1,000,000.00 for Defendants' acts and agreed upon omissions which constitutes civil conspiracy.

page 15

b.) Award Plaintiff One Million Dollars, $ 1,000,000.00 for the Defendants' invasion and/or false light invasion of his privacy.

c.) Award Plaintiff One Million Dollars, $ 1,000,000.00 for the Defendants' misappropriation of Plaintiff's name and likeness.

d.) Award Plaintiff One Million Dollars, $ 1,000,000.00 for the Defendants' benefit from unjust enrichments.

e.) Award Plaintiff an amount of damages that is not measurable in all categories for Defendants' intentional or reckless infliction of emotional distress and outrage, plus a measurable amount for the imposition of liability for a reasonable measurement of royalties.

f.) Award Plaintiff any amount deemed necessary, as the interest of justice so requires.

Submitted By,

Savino Braxton, pro se

## Demand For Jury Trial

The Plaintiff hereby request for a jury trial in this action.

page 16

## Certificate Of Service

I hereby certify that on this 27th day of December, 2019, the foregoing was mailed to the following :

Clerk of Court
U.S. District Court
N.D. District of Maryland
101 N. Lombard Street
Baltimore, Maryland 21201

and

Home Box Office, Inc.
1100 Avenue Of The Americas
Room H13-16
New York, NY 10036

and

David Simon

and

Edward Burns

Respectfully Submitted

_____
Savino Braxton, pro se

page 17